IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL VEACH, ROCKY L. ESPINOSA, PHILIP VALDEZ, DOMINIC VALDEZ, ARMANDO JUAREZ, and ALAN MATTHEW RAMIREZ, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-04-3239 |
| THE CITY OF HOUSTON, C.O. BRADFORD, and MARK AGUIRRE, | § § § § | |
| Defendants. | § § § | |

## MEMORANDUM AND ORDER

Pending before the Court in this civil rights dispute arising from the August 2002 arrest of Plaintiffs is a Motion for Summary Judgment [Doc. # 19] ("Defendants' Motion") filed by The City of Houston (the "City") and former Chief of Police C.O. Bradford ("Bradford").[1]  Plaintiffs have filed a Response [Doc. # 40] ("Plaintiffs' Response"),[2] to

---

[1]     In addition to the City and Bradford, HPD Captain Mark Aguirre remains a Defendant in this case.  All other Defendants have been dismissed.

[2]     Plaintiffs' Response refers the Court to the summary judgment response in a companion case in this Court, *Chad Cory, et al. v. City of Houston, et al.,* Civil Action No. H-03-0125 [*Cory* Doc. # 103].  The *Cory* response  is substantially similar to the plaintiffs' response in another companion case in this Court, *Lopez, et al. v. The City of Houston, et al.,* Civil Action No. H-03-2297 [*Lopez* Doc. # 144].

which Defendants have filed a Reply [Doc. # 42]. This motion is ripe for decision. Having considered the parties' submissions, all matters of record, and the applicable legal authorities, the Court concludes that Defendants' Motion for Summary Judgment should be **granted in part and denied in part**.

## I.   <u>BACKGROUND</u>

The following facts are alleged in Plaintiffs' Second Amended Complaint [Doc. # 6]. On the night of August 17-18, 2002, Houston Police Department ("HPD") officers orchestrated a surprise raid upon the parking lots of a K-Mart retail store and Sonic Drive-In restaurant located at the 8400 block of Westheimer Road in Houston, Texas. Plaintiffs allege that approximately seventy-seven armed police officers, backed up by helicopters, two tow trucks and jail transports, descended upon the parking lot and indiscriminately arrested Plaintiffs and everyone else on the premises – two hundred seventy-eight people. At the Sonic, HPD officers brandished pistols and shotguns in the faces of customers, verbally abused them, knocked drinks and food from their hands and off their tables, and ordered them to move to a designated location in the parking lot. Those who were eating in their cars were hauled from their vehicles at gunpoint and herded to the designated location. Those at the K-Mart were treated similarly. Police also rounded up the passengers of cars stopped at a traffic light waiting to leave the parking lot. All were forced into a containment area. The officers refused to examine receipts as proof of legal entry on the property or listen to the detainees' explanations. Among those caught up in the raid were children shopping with a parent, an off-duty air traffic controller, and honor students including a class valedictorian.

The detainees were placed under arrest for "attempted trespassing" and handcuffed with tight plastic zip ties.  When some complained, officers further tightened the cuffs.  As a result, many of the arrestees suffered bruising, swelling, and numbness of the wrists, hands and arms.  They were searched.  Some of the female arrestees were searched in front of male officers and were the subjects of jests and humiliation.  They were divided by sex, with brothers separated from sisters, children from parents.  Then the arrestees were forced to sit or kneel for hours on the ground beside garbage bins on the hot summer nights in question.  Some needed to use the restroom and were forced to soil themselves when this basic dignity was denied.  The last of the arrestees were not transported out of the parking lot until approximately six in the morning.  Some suffered dehydration.

The arrestees were transported to jail in hot, overcrowded buses. At the prison, many were forced to wait outside for several hours while those inside were processed.  Inside, they were packed body-to-body in holding cells with dangerous criminals.  The cells stank of sweat, urine, feces, and vomit, the toilets were open to public view, and were filthy and overflowing.  The prisoners faced the Hobson's choice of sitting in filth or standing for the entire length of their confinement.  Jail personnel and officers verbally jeered at them.  Those who complained were processed last.  Those who refused to plead guilty were not taken before a magistrate.  Plaintiffs spent differing amounts of time in prison; some were released after as few as four hours; many were imprisoned in excess of twenty hours.  The last arrestee remained jailed until Monday morning, August 19, 2002.

Many of Plaintiffs found that their vehicles had been towed from the K-Mart and Sonic parking lots. They had to pay fees to retrieve them. Some vehicles were damaged.

As a warm-up for the K-Mart arrests, on the prior night, August 16-17 2002, HPD officers orchestrated a surprise raid upon the James Coney Island restaurant on the 5700 block of Westheimer Road. During that operation, the officers arrested approximately forty-three patrons. As with the raids of August 17 and 18, HPD officers accused the patrons of "attempted trespassing," but refused to examine their receipts as proof of their status as invitees on the property.

At each of the raids, arresting officers signed arrest affidavits without personal knowledge of facts establishing probable cause to arrest. Plaintiffs claim that the officers knew or should have known that they were not guilty of attempted trespassing. Of the two hundred seventy-eight arrests made at the K-Mart/Sonic and the forty-three arrests at the James Coney Island, just one was for misdemeanor possession of marijuana and one was for parole violation. All the "attempted trespassing" charges against the rest of the arrrestees were ultimately dismissed as wrongful arrests. There were no arrests for public intoxication, vandalism, drag racing, trespassing, or any other crime.

Plaintiffs allege that their arrests were made pursuant to an HPD exercise dubbed "Operation ERACER," mass arrests on August 16, 17, and 18, 2002 intended to target illegal street racing. All Plaintiffs allege that the operations were conducted by Captain Mark Aguirre with the knowledge and express or implied authorization of Chief C.O. Bradford. Plaintiffs further allege that the arrests were made pursuant to an express or implied policy

of HPD known as "zero tolerance."  Pursuant to this alleged policy, HPD targets an area and arrests anyone and everyone in the area without regard for probable cause or evidence of criminal activity.

There is no evidence before the Court that any street racing occurred on the evenings in question.

Plaintiffs assert causes of action pursuant to 42 U.S.C. § 1983 against the City, Bradford, and Aguirre for constitutional civil rights violations.  Plaintiffs also assert a state law cause of action against Bradford and Aguirre for the intentional tort of false arrest and imprisonment.

## II.   <u>DISCUSSION</u>

In their Complaint, Plaintiffs claim five bases for the City's liability under § 1983: (1) execution of a policy, custom or practice that deprived them of constitutionally protected rights; (2) a custom or practice, not formally approved, but so widespread that it takes the force of law, that deprived them of constitutionally protected rights; (3) "insufficient supervision" of HPD employees resulting in the deprivation of their constitutional rights; (4) express directive, approval, or instruction of Operation ERACER by Bradford, the City's policymaker; and (5) ratification of Operation ERACER by Bradford.  The constitutional rights that Plaintiffs assert arise under (1) the Fourth Amendment's prohibition against unlawful detention and arrest, (2) the constitutional prohibition against the use of excessive force and against custodial abuse, and (3) the Fourteenth Amendment right to due process of

law.  The Court initially addresses Plaintiffs' First Amendment and ratification claims, and then turns to Plaintiffs' remaining claims.

### A.        Plaintiffs' First Amendment Claim

The Court issued a Memorandum and Order dated December 13, 2004 [Doc. # 7], holding that the First Amendment does not apply to the circumstances alleged by Plaintiffs. The Court permitted Plaintiffs to amend their Complaint, but directed Plaintiffs to conform their pleading to this Court's rulings in companion cases.  The Court specifically stated that Plaintiffs may not assert First Amendment claims.[3]  Plaintiffs pleaded the First Amendment in their Amended Complaint, but do not defend this claim on summary judgment.  Plaintiffs' First Amendment claim is dismissed.

### B.        Plaintiffs' Ratification Claim

Plaintiffs' Complaint also includes a ratification claim.  A municipality can be liable for its "ratification" of employees' acts.  *See Grandstaff v. City of Borger,* 767 F.2d 161, 171 (5th Cir. 1985) (finding municipal liability based on city's failure to reprimand or discharge officers after their egregious conduct).  Defendants move for summary judgment on Plaintiffs' ratification claim.  Plaintiffs do not identify any evidence for the Court that Chief Bradford ratified Operation ERACER by failing to reprimand those who executed the operation.  To the contrary, the City conducted a thorough investigation in which it determined that some officers were at fault.  As a result of the investigation, Captain Aguirre was indefinitely

---

[3]        Memorandum and Order dated December 13, 2004, at 12-13.

suspended and other supervisors were disciplined.[4]  Plaintiffs do not defend their ratification

claim in their Response to Defendants' Motion.  Because there is no evidence to support this

claim, it is dismissed.

     **C.**     **Plaintiffs' Remaining Claims**

Plaintiffs' remaining claims, and the summary judgment arguments advanced by the

parties in this lawsuit, are identical to those asserted in a companion case, *Lopez, et al. v. The*

*City of Houston, et al.,* Civil Action No. H-03-2297 ("*Lopez*").   The Court hereby

incorporates the analysis and rulings set forth in the Court's Memorandum and Order dated

July 25, 2005, in *Lopez,* a copy of which is attached to this opinion.

**III.**     **CONCLUSION AND ORDER**

The Court therefore dismisses Plaintiffs' First Amendment claim and Plaintiffs'

ratification claim.

The Court concludes that Plaintiffs may proceed with their § 1983 claim against the

City and Bradford based in the facially unconstitutional Jackson Plan.  To succeed on this

claim, Plaintiffs must prove that Bradford personally approved of the specific Jackson Plan.

Plaintiffs may also proceed with their§ 1983 claim against the City and Bradford based on a

"zero tolerance" custom of detention without reasonable suspicion.  To succeed on this claim,

Plaintiffs must prove the existence of such a custom and Bradford's knowledge or

constructive knowledge of the custom.  In addition, Plaintiffs may proceed against the City

---

[4]     *See* Affidavit of Executive Chief Montalvo, Exhibit 3 to Defendants' Reply; Affidavit of Assistant Chief V.L. King, Exhibit 17 to Defendants' Reply.

and Bradford on their claim that Bradford failed to supervise his staff so as to prevent Plaintiffs' unlawful detention.

The Court finds there are genuine questions of material fact that preclude summary judgment in Bradford's favor on qualified immunity on Plaintiffs' claims against Bradford based on a policy, practice, or custom of detention without reasonable suspicion, and based on Bradford's failure to supervise so as to prevent Plaintiffs' illegal detentions.

All other § 1983 claims against the City and Bradford are dismissed.  Plaintiffs' state law claims against Bradford are dismissed.  It is hereby

**ORDERED** that Defendants The City of Houston and C.O. Bradford's Motion for Summary Judgment [Doc. # 19] is **GRANTED in part** and **DENIED in part**.

SIGNED at Houston, Texas, this **27th** day of **July, 2005.**

_____
Nancy F. Atlas
United States District Judge